SARTAIN, Judge.
Plaintiff, Foti Enterprises, Incorporated, the developer of a public housing project in Donaldsonville, Louisiana, sued its vendors, Carlo Pizzolato, Mildred Templet Pizzolato, Jacqueline Pizzolato Miglicco and Helena Pizzolato (hereinafter referred to as “Pizzolato”) for the sum of $8,581.- *573 96, representing the amount of a sewerage lien assessed against the real estate purchased by Foti Enterprises from Pizzolato for use in developing a low rent public housing project. The tract of land had been subject to various option agreements and extensions thereof both before and after the sewerage lien was recorded in October of 1969, and the act of sale was passed on December 20, 1969. No work had yet begun on the sewer project.
Shortly before December 20, 1969, Carlo Pizzolato was requested to pay the sewerage lien and he promptly notified Foti Enterprises that he refused to do so. It is clear from the pleadings and the testimony that all parties knew about the lien and the amount thereof and about Mr. Pizzolato’s steadfast refusal to pay it, to the extent that he would not sign the act of sale if he were required to pay the lien.
The representative of Foti Enterprises, Inc. appeared on December 20, 1969, with two sets of checks, one for the full purchase price including the amount of the lien and the other for the purchase price less the amount of the lien. Being unable to persuade Mr. Pizzolato to pay the lien, Foti Enterprises paid the full amount and shortly thereafter filed this suit.
The case was tried by a jury which returned a unanimous verdict in favor of the defendants and judgment was rendered accordingly, dismissing plaintiff’s suit at its costs. Foti Enterprises perfected this appeal. We affirm.
The trial judge delivered to the jury the following eight instructions, the first five of which were requested by the plaintiff and the last three by the defendants:
“NUMBER ONE: The sole issue here is whether plaintiff, Foti Enterprises, Inc., or the defendants, Carlo Pizzolato, and others, as sellers, had the obligation to satisfy the sewerage lien. Any issues as to Government contracts or subsequent building or amounts are not to be considered.
“NUMBER TWO: Generally the seller is obligated to deliver title to property free and clear of all liens, and encumbrances in the absence of a specific agreement to do otherwise.
“NUMBER THREE: This is not a claim for reduction in price but a claim for reimbursement of charges allegedly wrongfully charged to plaintiff purchaser.
“Plaintiff claims he paid the charges under duress and protest. If you believe this and if you believe it was wrongfully charged, then you should de-' cide for plaintiff.
“NUMBER FOUR: The fact that plaintiff Foti Enterprises, Inc., signed the sale knowing the lien to be on the property is not a bar to recovery if you believe it was forced to do so by circumstances beyond its control.
“In other words, you should first determine if the plaintiff acted out of duress, and if so, you should then decide whether the property was to be delivered free and clear of all encumbrances or if the property was to be delivered subject to the lien.
“NUMBER FIVE: The fact that the plaintiff is a corporation and the defendants are individuals is of no consequence and both parties are to be considered as having equal rights under the evidence. We are not concerned with whether the corporation should bear the loss or the individuals, but whether justice and the law and the evidence require one or the other to satisfy the lien.
“NUMBER SIX: You are not to believe that a purchaser cannot assume charges *574 and liens on the property he purchases. Contrarily (sic), if a purchaser assumes liens and charges declared to him at the time of the sale, he must satisfy them.
“NUMBER SEVEN: A purchaser can purchase property at his risk and peril, and if he is made aware of certain risks and perils and assumes them, he cannot complain or call upon his seller for relief.
“NUMBER EIGHT: (actually number one of ten instructions requested by defendants) : Assessment against affected property, on a front footage basis, to pay the cost of sewerage improvements by a municipality are purely in rem, that is, the assessment attaches to the property affected, and there is no personal responsibility or debt of the owner for the assessment or lien resulting therefrom, (citations omitted)”
The counsel for plaintiff has referred us to two cases in which the vendor was held liable for paying a lien on the property sold. In the case of Arkla Industries, Inc. v. Hoag, 210 So.2d 594 (2nd La.App.1968), the contract to sell provided that Mr. Hoag, the vendor, would “convey the property by the usual form of warranty deed, free from any liens, mortgages or encumbrances.” Before the deed was executed, both parties learned of a paving lien that had not been fully paid and they were unable to agree as to who should bear this expense. The paving had been virtually completed by the date of the execution of the deed. The parties were nevertheless willing to proceed with the sale and agreed to a later judicial determination of liability for the paving costs. The vendee withheld the amount thereof from the purchase price pending that determination and clearly did not assume the charges. The court ruled that the vendor was liable for the paving costs because of the language of the contract to sell, quoted supra.
In the case of Hingle Brothers, Inc. v. Bonura, 248 So.2d 391 (4th La.App.1971), it is not specifically stated that the purchaser was aware at the time of the sale that a paving lien would eventually be filed against the property and there was no discussion at the time of the sale as to responsibility for such expenses or that the volition of the parties would be affected by such considerations. The court found that the ordinances authorizing the paving had previously been filed of record and that the paving had already been done, thus creating an encumbrance against the property which the vendor, under his duty to deliver a merchantable title, had either to remove by payment or to exclude from his warranty. The court ruled that he had done neither and then applied the general rule that in the absence of evidence of a contrary intent the seller should deliver a title free of liens and encumbrances.
In the instant case, the option agreement contained a somewhat different provision relative to disputes over merchantability:
“5.
“If this option is exercised by Optionee within the option period, Optionee, within thirty (30) days of such exercise, shall furnish to Optionors a written attorney’s opinion regarding the validity and merchantability of the title to the optioned property. Should such opinion or report reflect any objections or encumbrances to the title, Optionors shall have not more than forty-five (45) days from the receipt of the opinion within which to meet the requirements thereof, and Op-tionors shall undertake and make diligent efforts to meet such requirements. In the event such is not made satisfactory to Optionee within said period, Optionee shall have the right upon written notice to Optionors within ten (10) days from the expiration of the said forty-five (45) day period provided above for meeting title requirements to either (1) have a delay of thirty (30) days from which Optionee may itself seek to cure title de *575 ficiency, or (2) withdraw from this agreement, in which latter event all considerations paid for option period, or extended period, shall be returned to Op-tionee. The Optionee, its successors or assigns shall have the right and privilege, but without obligations so to do, to waive any and/or all of such title deficiencies or defects. . . .
“6.
“Either party shall have the right to specific performance, the consideration for the granting of this option not being considered as earnest money. Optionee reserves the right to waive title deficiencies.”
Foti Enterprises did not choose to exercise any of the rights or pursue any of the remedies granted to it by the above provisions and contends that there was not sufficient time in which to do so. But the urgency was attributable to other contract or investment commitments and not to any action on the part of the defendants. The plaintiff was simply faced with the alternatives of paying the sewerage lien in order to purchase the property when it wanted to on December 20, 1969, or suing for specific performance or any other contractual or legal remedy against the defendants. Plaintiff’s reluctant paying of the lien without reserving any rights, as was done in the Arkla Industries, Inc. v. Hoag case, supra, constituted an assumption of the charges and a waiver of the title deficiencies as it had a right to do under the express terms of the option agreement. The defendants cannot be held accountable for the wisdom of plaintiff’s choice or the reluctance with which it was made when it was based on other considerations not involving the defendants.
For the above and foregoing reasons, the judgment appealed from is affirmed, at plaintiff-appellant’s costs.
Affirmed.